UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ALAN ISRRAEL OCAMPO, | ) |
| | ) |
|                *Petitioner*, | ) |
| | ) |
|     v. | )    No. 2:23-cv-00241-MKK-JPH |
| | ) |
| FRANK VANIHEL, | ) |
| | ) |
|                *Respondent*. | ) |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DIRECTING ENTRY OF FINAL JUDGMENT**

Petitioner Alan Ocampo was convicted in a prison disciplinary proceeding for the offense of "Violation of Law" following investigators' report of an alleged drug conspiracy involving him, fellow inmates, and Mr. Ocampo's non-incarcerated girlfriend and the seizure of what was believed to be fentanyl from his girlfriend. Mr. Ocampo's role in the conspiracy led to a formal criminal charge in Indiana state court. In state court, additional drug testing revealed that the substance was not in fact fentanyl but instead was some other substance; subsequently, Mr. Ocampo's criminal case was dismissed. Mr. Ocampo has filed a Petition for a Writ of Habeas Corpus, [Filing No. 1], attempting to vacate his disciplinary conviction.

**I.**
**LEGAL BACKGROUND**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016) (citation omitted). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the

1

evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell*, 418 U.S. 539, 563–67 (1974).

## II.
### FACTUAL BACKGROUND

On May 5, 2022, Officer B.C. Eloiza charged Mr. Ocampo with violation of Code A-100, Violation of Law, for a conspiracy to deal narcotics in violation of Indiana Code 35-48-4-1. Based on a confidential Report of Investigation, Officer Eloiza wrote a Conduct Report, which stated:

> On 3/3/2022 I, B.C. Eloiza did communicate with Evansville Police Department regarding an ongoing investigation related [to] the dealing and distribution of narcotics. Based on the facts surrounding the investigation[,] Evansville Police Department did successfully interdict fent[anyl] believed to be meant to be trafficked into Branchville Correctional Facility. Conversations made by Offender Ocampo, Alan #281850 leading up to the interdiction as well as calls made after the interdiction did confirm this offender's involvement. On 3/3/2022 Offender Ocampo placed several calls to a female and received updates on her location as well. Ocampo also directed this female to retrieve unknown items and ultimately directed her to travel to Evansville where she was arrested based on the interdiction.

[Filing No. 15-1; *see also* Filing No. 15-2 (Report of Investigation).] The female noted in the Conduct Report was Mr. Ocampo's girlfriend. [*See* Filing No. 19 at 6.]

Mr. Ocampo received notice that he would be subjected to a disciplinary hearing, and he requested a lay advocate and pleaded not guilty. [Filing No. 15-4.] On May 17, 2022, at the disciplinary hearing, Mr. Ocampo did not make a statement, and based in part on Officer Eloiza's confidential Report of Investigation, Mr. Ocampo was found guilty. [Filing No. 15-7.] His custodial sanctions included a loss of 180 days of good-time credits and a one-step demotion in credit-earning class. [Filing No. 15-7.] Mr. Ocampo appealed internally and was denied at each level. [Filing No. 15-8; Filing No. 15-9.]

Not long after Mr. Ocampo's disciplinary hearing, on July 22, 2022, a criminal case was opened against Mr. Ocampo for dealing narcotics. *State of Indiana v. Ocampo*, No. 82D03-2207-

F2-4152 (Vanderburgh Super. Ct. July 22, 2022). A separate criminal case was opened against an alleged co-conspirator, Mr. Reginald Prather. *State of Indiana v. Prather*, No. 82D03-2207-F2-004155 (Vanderburgh Super. Ct. July 22, 2022). In Mr. Ocampo's case, the suspected fentanyl was tested, only to discover that "lab results indicate[d] no controlled substance [was] detected in the suspected fentanyl." [Filing No. 15 at 5 (Respondent's account).] According to Mr. Ocampo, the suspected fentanyl was in fact melatonin, which Mr. Ocampo's girlfriend took for a medical condition. [Filing No. 19 at 6.] Both Mr. Ocampo's and Mr. Prather's cases were dismissed. *Ocampo*, No. 82D03-2207-F2-4152 (Apr. 14, 2023); *Prather*, No. 82D03-2207-F2-004155 (Apr. 17, 2023).

Mr. Ocampo has now filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, seeking to invalidate his disciplinary conviction.

## III.
### DISCUSSION

### A. Sufficiency of the Evidence

Mr. Ocampo argues that because the seized substance tested negative for fentanyl and his later state case was overturned, there was insufficient evidence to convict him in his prior disciplinary proceeding, and that the evidence against him was falsified. [Filing No. 1 at 2.] He describes this ground as:

> Insufficiency of [the] evidence and falsifying of evidence charging me with conspiracy to deal a narcotic drug falsifying the evidence claiming it tested positive for fent[anyl] and was charged with a [level] 2 conspiracy to deal narcotic drug fent[anyl] . . . and a A-100 violation of law-conspiracy to deal narcotic drug write-up. After my attorney filed a Motion for Forensic Testing, and it was sent to the forensic lab, the results came back negative for any narcotic drug and [the] charge/case was dismissed. If the outside charges were dismissed due to it testing negative for any narcotic drug then my A-100 violation of law, conspiracy to deal a narcotic drug[,] should be overturned.
>
> The evidence for the A-100 (violation of law) was based o[n] assumption and speculation which led to 7 people being charged with a level 2 conspiracy to deal a narcotic drug. All 7 defendants['] charges were dismissed . . . due to falsified evidence between the prison I.C. officer and the detectives in Vanderburgh County, IN. The officers lied about it being a drug, in which the incident that started this entire investigation didn't have anything to do with any narcotic. If I never violated local, state or federal laws, myself and the other 3 defendants should have never received nor [been] found guilty of a A-100 violation of law.

[Filing No. 1 at 2–3.][1]

The Respondent argues that the evidence against Mr. Ocampo was sufficient. [Filing No. 15 at 6.] The Respondent states that "the conduct report alone suffices as some evidence of guilt," and so too does the confidential investigation. [Filing No. 15 at 7; Filing No. 15 at 12.] The Respondent argues that Indiana criminal law "does not require that the conspiracy charge be based on actual possession of actual narcotics"; rather, the crime is making an agreement to "put[] the wheels in motion." [Filing No. 15 at 9.] The Respondent adds that there are other explanations for why the substance was not fentanyl, including that the trafficking was a "dry run," or that the supplier "failed to deliver the agreed product." [Filing No. 15 at 11.] Regardless, the Respondent argues, "[Mr.] Ocampo had an agreement to (and was actively trying to) ferry drugs into the prison to sell." [Filing No. 15 at 11.]

---

[1] Mr. Ocampo's argument references Mr. Prather, who similarly appealed the decision in his own disciplinary proceeding in this Court. *Prather v. Vanhil*, No. 2:23-cv-264-MG-JPH.

Mr. Ocampo argues in reply that whatever his girlfriend was going to pick up "cannot be deemed contraband if said items are unknown and undetermined. Even if the items were known[,] [that] does not make it contraband prohibiting it from being able to be possessed on the streets just because it would be" prohibited in the prison. [Filing No. 19 at 12.] He argues that not finding drugs on his girlfriend does not indicate there was a "dry run," but simply reflects "no agreement to sell, buy or deliver" controlled substances. [Filing No. 19 at 12.] He asserts that "[i]f someone were to pay someone . . . to dr[ive] [halfway] across the state to see if someone was watching," it would be tantamount to a "logistics company with the intention" of making the poor decision to not remain in business. [Filing No. 19 at 12.] He also contends that "[t]he fact that the search yielded only melatonin, the medication for [Mr. Ocampo's] girlfriend . . . would show no mistake in the supplier's product unless he was delivering [his girlfriend] her medication and again, not a violation of any state or federal law." [Filing No. 19 at 12.] He argues further that "if the alleged narcotic was actually tested on March 3rd 2022, instead of assuming, inventing false results, with the factual results coming back negative . . . [t]hen there would [have] never been a" Conduct Report, resulting in no grounds for a disciplinary hearing. [Filing No. 19 at 13.][2]

In a prison disciplinary proceeding, the "hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274 (citations omitted). The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *See Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the

---

[2] Mr. Ocampo also argued that he was unlawfully denied a lay advocate, that the prison violated certain administrative policies, and various pieces of undeveloped arguments, but he did so for the first time only in his reply brief. [*E.g.*, Filing No. 19 at 4; Filing No. 19 at 9.] Therefore, he waived these arguments. *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) (stating that "arguments raised for the first time in [a] reply brief are waived").

conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56 (citations omitted); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) (citation omitted) ("The some evidence standard . . . is satisfied if 'there is any evidence in the record that could support the conclusion reached by the disciplinary board.'"). A Conduct Report "alone" can "provide[] 'some evidence' for the . . . decision." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999).

In this case, Mr. Ocampo presents new evidence that post-dates his disciplinary proceeding—namely, that his narcotics charge was dismissed in Indiana state court. The barrier to Mr. Ocampo's argument is that a dismissal is not an acquittal, and even if it were, it would mean only that he could not be convicted beyond a reasonable doubt, a standard far higher than the "some evidence" standard that applies to Mr. Ocampo's disciplinary proceeding. Even if the dismissal of his charge were considered exculpatory evidence, the Court "look[s] only to whether [the petitioner] received the procedural protections due under the Constitution," at the time of the disciplinary hearing, "and so long as he did, subsequent tender of additional evidence is irrelevant to [the Court's] due process determination." *Jones v. McCaughtry*, 6 F. App'x 371, 373 (7th Cir. 2001) (citation omitted). Regarding the procedural protection of some evidence, the Conduct Report alone was sufficient to convict him. So, too, was the confidential Report of Investigation, which the Court has reviewed in camera and concludes that it provides even greater evidence supporting the disciplinary conviction against Mr. Ocampo. [Filing No. 16 (confidential Report of Investigation filed *ex parte* for the Court's review).] "Because the 'some evidence' standard is met by [the reports], there is no basis for granting habeas relief unless [Mr. Ocampo] can somehow invalidate" those reports, which he cannot. *See McPherson*, 188 F.3d at 786.

As to falsification of evidence, Mr. Ocampo provides no evidence that officers brought fraudulent charges against him or any explanation of how and why they would do so. Even if the

6

false-positive fentanyl reading was fraudulent – and the Court does not find that it was – it would not help Mr. Ocampo's argument. The Seventh Circuit has "long held that as long as procedural protections are constitutionally adequate, [a court] will not overturn a disciplinary decision solely because evidence indicates the claim was fraudulent." *Id.* at 787 (citation omitted). If the procedural due process requirements of *Wolff* are satisfied, a reviewing court's role "is limited to determining whether there was sufficient evidence to support the [hearing officer]'s decision." *McKinney v. Meese*, 831 F.2d 728, 733 (7th Cir. 1987) (citing *Hanrahan v. Lane*, 747 F.2d 1137, 1141 (7th Cir. 1984)).

Having found that there was some evidence to support Mr. Ocampo's conviction – and, indeed, evidence well beyond that – Mr. Ocampo cannot obtain habeas relief based on insufficient or falsified evidence.

## IV.
### CONCLUSION

"The touchstone of due process is protection of the individual against arbitrary action of the government[.]" *Wolff*, 418 U.S. at 558 (citation omitted). There was no arbitrary action in any aspect of the disciplinary proceedings or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Ocampo to the relief he seeks. Accordingly, Mr. Ocampo's Petition for a Writ of Habeas Corpus, Dkt. [1], is **DENIED** and the action is **DISMISSED**. Judgment consistent with this Order shall now issue.

So ORDERED.

Date: 01/09/2025

_M. Kendra Klump_
M. Kendra Klump
United States Magistrate Judge
Southern District of Indiana

Distribution:

ALAN ISRRAEL OCAMPO
281850
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
P.O. Box E
NEW CASTLE, IN 47362

David A. Arthur
INDIANA ATTORNEY GENERAL
David.Arthur@atg.in.gov